UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Crim. No. 6:17-cr-00037-GFVT-HAI-1 |
| V. | ) ) ) | |
| DAVID B. HAAS, | ) ) ) | **OPINION & ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Granted, a pandemic poses unique risks for the incarcerated. Congress has created a system that addresses these types of risks and, in expanding the opportunity for inmates to pursue compassionate release, ensured that inmates can obtain relief when appropriate. First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194. Now, David B. Haas has filed a motion seeking such relief. [R. 39.]

As explained below, Congress has set out an exacting administrative process that must be followed before judicial review. What that looks like exactly is the subject of some debate. But this is clear: under the statute, an inmate must "fully exhaust" the administrative remedies available. And since that has not been completed here, Mr. Haas' motion must be **DENIED WITHOUT PREJUDICE**.

I

On July 26, 2017, Mr. Haas pled guilty to one count of distribution of child pornography. [R. 8.] On December 20, 2017, the Court sentenced Mr. Haas to 108 months imprisonment, followed by 15 years of supervised release. [R. 30.] As it stands, Mr. Haas has served approximately one-third of his nine-year sentence. [*See* R. 39-1 at 9.]

On July 7, 2020, Mr. Haas filed a motion for compassionate release under 18 U.S.C. 3582(c)(1)(A), arguing that his health conditions "increase his likelihood of contracting COVID-19." [R. 39 at 2.] Mr. Haas also acknowledges the severity of his criminal conduct and explains he has treated his imprisonment as an opportunity to address his issues. *See id.* at 14 ("He embraces the changes and blessings that he has experienced by shedding his former criminal ways."). The United States argues Mr. Haas' motion should be denied for two reasons: (1) Mr. Hass has failed to exhaust his administrative remedies and, in the alternative, (2) because the motion fails on the merits. [R. 41 at 4.]

## II

### A

A sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, "[t]he authority of a district court to resentence a defendant is limited by statute." *United States v. Houston*, 529 F.3d 743, 748 (6th Cir. 2008). The relevant statute here, § 3582(c)(1)(A), provides courts the authority to reduce a defendant's sentence in limited circumstances.

Courts may consider whether compassionate release is proper "upon motion of the Director of the Bureau of Prisons" or, if the BOP Director does not move for compassionate release, a defendant can directly petition the courts for relief.[1] 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). But a defendant must exhaust his administrative remedies in one of two ways before bringing a petition on his own behalf. 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement states as follows: A court may modify a

---

[1] The First Step Act of 2018 altered the compassionate release provision of 18 U.S.C. § 3582, allowing a defendant to move for such a reduction, whereas previously only the Bureau of Prisons could do so. Pub. L. No. 115-391, § 603(b)(1).

2

term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." The Sixth Circuit has explained that the exhaustion requirement is a "mandatory condition" which must be enforced. *Alam*, 960 F.3d at 833; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

Mr. Haas claims he has satisfied the exhaustion requirement within the statute because "30 days have elapsed since the receipt of the initial request by the Warden of FCI Ashland." [R. 39 at 7.] Indeed, Mr. Haas has provided documentation showing that he initially applied for compassionate release on April 17, 2020 which was then denied by the Warden on May 12. [*Id.*; *see also* R. 39-1 at 3.] So, Mr. Haas contends he has clearly demonstrated administrative exhaustion because the passage of thirty days after the request is all that is required, and he filed his motion for compassionate release on July 7—nearly three months after his initial request on April 17. [R. 39 at 7.] The United States disagrees with Mr. Haas' interpretation of the statute. [R. 41.] The United States acknowledges that Mr. Haas has begun the administrative process but contends more than the mere passage of thirty days after receipt is required where the Warden denied the request within that thirty-day period. *Id.* The United States argues that, following the Warden's denial, Mr. Haas must now "complete the appeals process." *Id.* at 4.

B

The disagreement between the parties amounts to a disagreement over how the "lapse of 30 days" language within the statute should be interpreted as it concerns administrative exhaustion. Courts throughout the country have reached different conclusions on this issue.

3

Like Mr. Haas, some interpret the provision "to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." *United States v. Ng Lap Seng*, No. S5 15-CR-706 (VSB), 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) (considering the different interpretations and citing various cases in which courts adopted this interpretation). Consistent with the United States' view, "other courts have interpreted the 'lapse' language to require the passage of 30 days without BOP action on the request, in essence reading the language as a futility provision." *Id.* (same). After review of the statute and the relevant case law, the Court agrees with the latter interpretation and reads the statute to allow a defendant to demonstrate administrative exhaustion via the "lapse of 30 days" avenue only where the warden has failed to address the initial compassionate release request within thirty days of receipt.

1

"When interpreting a statute, a court begins with the language of the statute and examines the plain meaning of its words." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017). As part of this analysis, courts may consult dictionary definitions for guidance where no statutory definition exists. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060 (6th Cir. 2014) (citation omitted). Importantly, "the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citation omitted). In other words, courts must "follow the cardinal rule that a statute is to be read as a whole . . . ." *Id.* "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989).

4

As noted, the relevant portion of § 3582(c)(1)(A) states that a defendant may file a motion after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." To properly interpret this provision, the meaning of "lapse" is important but, ultimately, inconclusive. Definitions of the word include "a passage of time" but also include "a slight error typically due to forgetfulness or inattention" and "the termination of a right or privilege through neglect to exercise it within some limit of time." *Lapse*, Merriam-Webster.com Dictionary, Merriam-Webster (accessed August 3, 2020), *available at* https://www.merriam-webster.com/dictionary/lapse. Of course, these different definitions can be read to support both Mr. Haas' and the United States' different interpretations. *See Ng Lap Seng*, 2020 WL 2301202, at *6. So, next, the meaning of the provision must be considered in light of the statutory context.

a

In context, applying the former definition—defining lapse simply as "a passage of time"— leads to an implausible interpretation of the statute. Under this interpretation, a defendant would only need to wait thirty days after the warden receives their compassionate release, even where the warden responds and denies the request within that thirty-day period, before petitioning the court for relief. In essence, this interpretation would "render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants . . . would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." *Id.*; *see also United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277, at *8 (E.D. Ark. May 14, 2020) ("[This] interpretation of 'lapse of 30 days' effectively eliminates any reason at all for a defendant to engage in the administrative appeals process."). It is a stretch to conclude that Congress "went so far as to render meaningless the

5

BOP's consideration of such applications in the first instance without specific language evidencing such a Congressional intent." *Ng Lap Seng*, 2020 WL 2301202, at *6; *see also Smith*, 2020 WL 2487277, at *8.

The "passage of time" interpretation is also incompatible with administrative exhaustion requirements more generally. There are many legitimate reasons for requiring administrative exhaustion: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996); *see also Alam*, 960 F.3d at 835 ("Preventing prisoners from charging straight to federal court serves important purposes."). But under this interpretation, none of these benefits would be realized—a defendant could avoid higher-level BOP review of the request every time, regardless of how diligent BOP authorities are in responding.[2] *See Ng Lap Seng*, 2020 WL 2301202, at *6.

In the compassionate release context, the BOP is in the best position to assess an inmate's mental and physical health relative to the rest of the prison population, an inmate's potential risk to the public, and whether there are any "extraordinary and compelling reasons for release." *See, e.g., United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). And the advantages continue even where defendants petition courts for relief following administrative exhaustion. At that point, courts

---

[2] It also bears noting that, under this interpretation, there is the real potential for widespread inefficiencies as between the BOP and the courts. For example, if after appealing to the Regional Director, a defendant can properly apply to the court for relief once the thirty-day time period has passed, any review undertaken by the Regional Director before the petition to the court is effectively nugatory and, seemingly, any additional consideration unnecessary.

6

weighing the propriety of compassionate release will have the benefit of "greater ventilation" of the "harder-to-parse considerations" that accompany such requests.  *See Alam*, 960 F.3d at 834.  In sum, the many advantages attendant with requiring administrative exhaustion are directly applicable in the present context.

**b**

The above considerations make clear that the compassionate release scheme must be considered as a whole when interpreting § 3582(c)(1)(A)'s exhaustion requirement.  This in mind, reading the "lapse of 30 days" language as a futility provision leads to a much more logical result.  Under this interpretation, the process for consideration of compassionate release applications is "coherent and consistent" and fits cleanly with established BOP procedures.  *Ron Pair Enterprises, Inc.*, 489 U.S. at 240.

To apply for compassionate release within the BOP, a defendant must first submit a written request with the Warden.  28 C.F.R. § 571.61.  Then, if denied, a defendant may appeal through the Administrative Remedy Procedure.  Since at least 2014, the BOP has provided a clear timeline for consideration of appeals:

> Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

28 C.F.R. § 542.18; *see also* Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 1330.18, Administrative Remedy Program (Jan. 6, 2014), *available at* https://www.bop.gov/policy/progstat/1330_018.pdf.

When Congress enacted the First Step Act in 2018, allowing a defendant to petition the courts for a reduction, this timeline was well-established. *Smith*, 2020 WL 2487277, at *8 ("BOP regulations at the time the First Step Act was passed made clear the timetable involved."). So, "Congress had to have known, when drafting the First Step Act, that the process for full exhaustion takes far longer than 30 days." *Id.* This context established, the most logical conclusion is that Congress included the "lapse of 30 days" language to ensure that the warden of a respective facility would promptly address the compassionate release request or, if the warden failed to, to permit the defendant to petition a court for relief—not to provide defendants an opportunity to circumvent the administrative appeals process entirely.

Not only is the process more orderly under this interpretation, it also ensures that defendants' requests will be considered in a timely fashion. On the front end, if the BOP fails to act within thirty days after the initial request then a defendant can utilize the futility provision and come into court. 18 U.S.C. § 3582(c)(1)(A). And, in the more typical case where the warden responds and a defendant must exhaust his administrative remedies, the potential for undue delay is guarded against at every step. First, as established, there is a clear timeline BOP authorities must abide by in considering a defendant's appeal. 28 C.F.R. § 542.18. And, second, the same provision which provides that timeline also expressly provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* So, if BOP authorities move too slowly in resolving an appeal, a defendant may simply move to the next level. *Id.* If

8

after going all the way up the BOP chain, the defendant's request remains denied, then he or she may petition the court. 18 U.S.C. § 3582(c)(1)(A). Taken together, this scheme protects defendants from being subjected to inordinate wait times and avoids duplicative efforts from BOP authorities and courts.

For these reasons, the Court finds that "lapse of 30 days" language within § 3582(c)(1)(A) is properly interpreted to allow a defendant to directly petition the courts for relief only where the warden has failed to address the initial compassionate release request within thirty days. If a defendant's initial request is denied within thirty days after the warden's receipt of the request, then the defendant must exhaust the administrative appeals process before petitioning the courts for relief.

### 2

Before proceeding to how the "lapse of 30 days" option applies to Mr. Haas' case, the Court will briefly address the Sixth Circuit's holding in *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). In *Alam*, a prisoner requested compassionate release from the warden of his facility on March 25 and, ten days later, on April 4, moved for emergency relief in federal court under § 3582(c)(1)(A). 960 F.3d at 832. The Sixth Circuit affirmed the district court's dismissal of the prisoner's motion, explaining that the prisoner "ha[d] not exhausted his administrative appeals because he waited just 10 days after the warden's receipt of his request to file his motion in federal court, not the required 30 days." *Id.* The court explained further that, to move for compassionate release on his own behalf, the prisoner must "'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." *Id.* at 834 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Certain district courts within the Circuit have read *Alam* as the Sixth Circuit adopting the passage of time interpretation of the "lapse of 30 days" language—meaning a defendant need

9

only wait thirty days after the warden receives their compassionate release request before petitioning the court for relief, even where the warden denies the request within that thirty-day period. Indeed, in its analysis, the *Alam* court stated: "Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *Id.* But just as § 3582(c)(1)(A) must be read in context, so too must the *Alam* court's decision. As explained above, the *Alam* court was faced with a different procedural posture and a different question. *Id.* at 832. In this Court's view, *Alam* stands for the broader proposition that, at base, defendants like Mr. Haas must wait thirty days after receipt by the warden of the initial request before petitioning the courts for compassionate release. The Sixth Circuit has yet to directly address the more specific issue before the Court: whether, before petitioning the court for relief, a defendant needs to fully exhaust administrative remedies where the warden of his or her facility has denied the initial compassionate release request within thirty days of receipt.

### C

Now, back to the present case. As noted above, Mr. Haas initially applied for compassionate release on April 17, 2020 and was denied by the Warden on May 12. [*Id.*; *see also* R. 39-1 at 3.] Mr. Haas then filed his motion for compassionate release with this Court on July 7, 2020. [R. 39.] In response to Mr. Haas' motion, the United States timely objected to his failure to exhaust and argued that the motion should be denied accordingly. [R. 41 at 3; *see Alam*, 960 F.3d at 834 ("When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'").]

The United States is correct. Because the warden responded to Mr. Haas' compassionate release request within the allotted thirty days, the "lapse of 30 days" provision now has no

bearing on Mr. Haas' case. Under § 3582(c)(1)(A), Mr. Haas must now exhaust his administrative remedies before petitioning the courts for relief. He has failed to do so and, as such, the Court will deny his motion without prejudice to his ability to refile a renewed motion.

Notably, as it concerns Mr. Haas filing a renewed motion, Mr. Haas alleges that he continues to appeal the denial of his request through the BOP administrative process: "On June 22, 2020, form BP-10 (see Exhibit C) was mailed, and at the time of filing of this motion, no response has been received from that action." [R. 39 at 7.] Based on the record and the applicable regulations, an appeal to the Regional Director was the proper next step for Mr. Haas. *See* 28 C.F.R. § 542.15(a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). And because, as represented by Mr. Haas, the Regional Director has failed to respond within the allotted thirty days, it appears he may now submit his appeal to the General Counsel. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."); *see also* 28 C.F.R. § 542.15(a) ("An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.").

However, the United States represents that it "has been in contact with FCI Ashland officials who have confirmed that the Defendant has yet to file this appeal with the appropriate governing BOP official as of the date of [July 20]." [R. 41.] And, while Mr. Haas has attached the BP-10 form he filled out in support of his appeal [R. 39-1 at 10], he has failed to provide any documentation showing that he filed this form with the proper BOP official—here, the Regional

11

Director. Because Mr. Haas must exhaust his administrative remedies before petitioning the Court for relief, it is important he gets this right. Mr. Haas should confirm he filed his BP-10 through the correct channels and then proceed in accordance with processes laid out in 28 C.F.R. § 542.15 and 28 C.F.R. § 542.18.

### III

The Court is mindful of the need to safeguard the health and well-being of those within our prison system. But policymakers, not the courts, are tasked with crafting processes to address this need—even in times of crisis. Here, Congress has provided a clear process by which defendants can seek compassionate release and the Court must ensure that process is followed. *Alam*, 960 F.3d at 834. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant David B. Haas' Motion for Compassionate Release **[R. 39]** is **DENIED WITHOUT PREJUDICE**.

This the 7th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge